IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON, DIVISION

| | |
|---|---|
| PAJAK ENGINEERING, LTD §<br>    PLAINTIFF, §<br>§<br>V. §<br>§<br>ECOPETROL AMERICA, INC. §<br>    DEFENDANT. § | CIVIL ACTION NO._____ |

## PLAINTIFF'S ORIGINAL COMPLAINT

### A. PARTIES

1.  Plaintiff, Pajak Engineering, Ltd. ("Pajak") is a Canadian corporation duly organized and existing under the Province of Alberta with its principal place of business in Calgary, Alberta.

2.  Defendant, Ecopetrol America, Inc. ("EAI") is a corporation that is incorporated under the laws of the State of Delaware. EAI's principal place of business is located in Houston, Texas.  Defendant may be served with process through its registered agent for service, CT Corporation System, located at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

### B. JURISDICTION

3.  The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(2) because the suit is between a citizen of a U.S. state and a citizen of a foreign state that is not a lawfully admitted permanent U.S. resident. In addition, the parties have contractually consented to the jurisdiction of the Courts in this district.

### C. VENUE

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because EAI resides in this district. In addition, the parties have contractually consented to venue in this district.

### D. CONDITIONS PRECEDENT

5. All conditions precedent have been performed, or have occurred, as required by applicable law and/or contractual provisions.

### E. FACTS

6. Pajak has provided the oil and gas industry with engineering, project management and well-site supervisory services for well-site preparation, drilling, completion, production and lease restoration, both on and offshore since 1966. Ecopetrol, S.A. ("ESA") requested that Pajak provide consultation to ESA regarding drilling and completion practices in Colombia as a result of the successful drilling operations conducted by Pajak's other Colombian clients. Since ESA was a partner in some of these drilling operations in Colombia, it directly recognized the decreased well costs attributed to Pajak's project management and well-site supervisory services.

7. On August 15, 2013, Pajak and EAI (the U.S. subsidiary of ESA) executed a Master Service Agreement ("MSA"). A copy of the MSA is attached as Exhibit "A". Although the MSA was signed by Jose Vicente Velasco of EAI, the terms of the MSA were negotiated and approved by Juan Carlos Hurtado (ESA's V.P. of Drilling) and Rafael Guzman (ESA's V.P. of Exploration and Production Development). The MSA executed by Pajak and EAI was not a contract for the delivery of any type of product or device. Instead, the MSA was an agreement to provide consulting services and analysis on a continuous basis, with incremental billing that was defined by the Pajak personnel employed and the

work days performed by the Pajak personnel. Indeed, the MSA was written so that Phase I, Phase II and Phase III were under the complete control and direction of Mr. Hurtado and Mr. Guzman. In other words, Mr. Hurtado and/or Mr. Guzman were provided with the discretion to approve Pajak's work and instruct Pajak to begin another phase of work without the need for modifying the MSA. Mr. Velasco attached a Purchase Order in the amount of $487,608 to the fully executed MSA that was sent to Pajak.

8. Despite the fact that Pajak entered into the MSA with EAI, the MSA provided that Pajak would perform Project Management Services (the "Services") for drilling and completion operations conducted by EAI's parent company, ESA, in Colombia. ESA is a Mixed Economy Company, with a commercial orientation, organized as an "Anonymous Society" (equivalent to a Corporation) of a national level, under the Colombian Ministry of Mines and Energy.

9. The Services that were performed by Pajak for ESA included four principal areas of work: (a) reviewing and analyzing of ESA's existing technical data; (b) studying of equipment employed by ESA and field operations; (c) providing proposals from the analysis; and, (d) advising ESA on how to implement proposals. Pajak assigned three consultants to perform the Services for ESA in Columbia, Ken Lamacraft, Jay Scott and Jim Rivest (the "Pajak Consultants"). The Pajak Consultants were an extremely experienced team that had additional support available from Pajak personnel in Calgary, Canada. The Pajak Consultants had successfully implemented Pajak's "Efficiency Model" on behalf of oil & gas companies operating throughout the world, including in Colombia. During the time that the Services were performed in Colombia by Pajak, the Pajak Consultants reported directly to Mr. Hurtado, Mr. Guzman or other ESA employees directed to interact with Pajak by Mr. Hurtado or Mr. Guzman.

10. Initially, ESA requested that Pajak focus the Services that it was providing on the Provencia / San Roque area of Colombia. Accordingly, the Pajak Consultants traveled to ESA Bogota, Colombia office and began working under the direction of Mr. Hurtado. After arriving in Colombia, the Pajak Consultants met with Mr. Guzman, Mr. Hutado and Edwin Sanchez (ESA's Drilling Manager) on August 29, 2013, where Mr. Guzman ordered that a meeting be held with all service providers operating in the Apiay field. On August 30, 2013, the Pajak Consultants attended a general meeting conducted by Mr. Guzman and Mr. Sanchez and attended by representatives from SLB, Howco, WFT, Nabors Drillings, BHI and several other service providers. The purpose of the meeting was to discuss cost reductions that must be met in the Apiay field.

11. Initially, Mr. Hurtado was available to the Pajak Consultants and provided support to the Pajak Consultants. However, the flow of information provided by Mr. Hurtado's team was slow and eventually delivered just prior to Mr. Hurtado leaving for a four week vacation. Nevertheless, Pajak conducted its initial study, summarized the data and made recommendations for "Potential Improvements" to ESA regarding Phase I of the Services provided by Pajak to ESA.

12. A multi-page report entitled, *The Analysis of the Drilling and Completion Operations for Provencia Area* (the "Provencia Report") was prepared by Pajak and personally presented to Mr. Hurtado and Mr. Guzman on or about October 15, 2013. After the Provencia Report was presented to Mr. Hurtado and Mr. Guzman, both men approved of the recommendations contained in the Provencia Report and authorized Pajak to continue the focus of the Services performed by Pajak in the Apiay / Suria area of Columbia.

13. Even before the Provencia Report was presented to ESA, the focus of the Services performed by the Pajak Consultants was re-assigned by ESA to the Apiay / Suria

area of Colombia. ESA assigned Edwin Sanchez to provide information and work with the Pajak Consultants to troubleshoot drilling problems that were occurring in the Apiay field, specifically on the GTQ-22, Apiay 37H and the Apiay 46H ST2 wells. On September 9, 2013, the Pajak Consultants met with Mr. Sanchez and Carlos Chaparo to discuss cost reduction in the Apiay Area. Mr. Sanchez provided the initial set of Apiay field data requested by the Pajak Consultants. However, the data provided by Mr. Sanchez was incomplete.

14. On September 10, 2013, the Pajak Consultants attended a meeting with Felix Feraro of ESA. During that meeting Mr. Feraro appeared to be upset regarding Pajak's role in optimizing the drilling operations in the Apiay area. In fact, Mr. Feraro made it clear that the Pajak Consultants were not welcome on "his" team, and he failed to provide information related to the Pason Screen – Incident, the open hole logs and the geological report / strip logs. Eventually, Mr. Feraro left ESA thereby requiring the Pajak Consultants to start over with another ESA employee.

15. Finally, ESA requested that Pajak provide an Independent Authorization for Expenditures ("AFE") and drilling program for the Suria 38 well. Luis Valderrama, the ESA drilling manager, was directed to provide an ESA engineer to work with the Pajak Consultants in gathering information and scheduling meetings with various service companies such as Halliburton and Schlumberger. Ricardo Bustos was the ESA engineer eventually assigned to work with the Pajak Consultants. On October 15, 2013, the Pajak Consultants traveled to ESA's office to meet with Mr. Bustos and gather data for the Suria 38 well. On October 16, 2013, the Pajak Consultants met in ESA's Bogota Cole Gas Office with Mr. Bustos and the geology and geomechanico teams for ESA, including Anna Maria Sanchez and German Figrera. At that time, the Pajak Consultants received, and later

reviewed, the geological prognosis and the geomechanical study for the Suria 38 well. During the month of October, ESA also provided the operations summary for the Suria 2, 3, 7, 12 and 16 wells which was reviewed by Pajak. The information provided by Mr. Bustos turned out to be incomplete and/or related to older offset wells.

16.   On November 11, 2013, the Pajak Consultants met with Mr. Bustos, Juan Carlos Morales, an ESA geologist, Andres Savcedo of WFT, and Daniel Sandoval of WFT to review the geological prognosis of the Suria area. During this time period, the Pajak Consultants also met with Halliburton Drilling Fluids to discuss the drilling fluids proposal and the Pajak Consultants also reviewed data provided by Howco, SLB, WFT, Qmax and Cal Frac. During the entire tenure of the Suria 38 well project, the requested data provided was either incomplete and/or provided untimely, Equally frustrating was the fact that the service providers were instructed by ESA personnel that they were not to speak to or provide data to the Pajak Consultants.

17.   As late as November 26, 2013, the Pajak Consultants met with Felipe Baquero, Oscar Zamora, Carlos Gonzalez and Jessica Ramos of the LaGloria drilling team to discuss the LaGloria 14 well. Despite the delays and the problems with obtaining information from the service providers, the Pajak Consultants constructed the AFE and the drilling program for the Suria 38 well using the information available to them.  On November 27, 2013, the Pajak Consultants met with Mr. Hurtado and Guillermo Ramirez (ESA's new drilling manager) in Colombia. Mr. Ramirez discussed ESA's "new direction" and restructuring with the Pajak Consultants and suggested that the MSA be suspended for the immediate future. In closing the meeting, Mr. Ramirez asked for a quick turn around time for the submission of the payment request by Pajak and suggested that ESA may use Pajak's services in the future.

## F.  SUBMISSION OF INVOICES / REQUEST FOR OTHER SERVICES

18. Pajak submitted invoice 109545 in the amount of $487,608.00 to EAI for payment on September 9, 2013. After the submission of invoice 109545 and the Provencia Report, Pajak was assured that the invoice would be paid and Mr. Hurtado and Mr. Guzman of ESA continued to request that Pajak perform the Services for ESA related to the Apaiy area. In fact, after invoice 109545 was submitted to EAI for payment, Pajak performed the following additional services for ESA as indicated by the referenced invoice:

| Invoice No. | Work days | Meetings/ conf calls | Reports and detailed correspondence to EIA | Study information provided by EIA | Phase | Field visits |
|---|---|---|---|---|---|---|
| 109667 | (10 days) Bogotá | 10 | 1 | 6 | Phase I | |
| 109668 | (10 days) Bogotá | 10 | 1 | 6 | Phase I | |
| 109669 | (10 days) Bogotá | 10 | 1 | 6 | Phase I | |
| 109670 | (11 days) Calgary | 1 | 1 | 4 | Phase I | |
| 109671 | (11 days) Calgary | 1 | | 1 | Phase I | |
| 109672 | (11 days) Calgary | 1 | 1 | 4 | Phase I | |
| 109673 | (14 days) Bogotá | 20 | 10 | 14 | Phases I and II (Phase II authroization) | |
| 109674 | (14 days) Bogotá | 20 | 10 | 14 | Phases I and II (Phase II authroization) | |
| 109675 | ( 13 days) Bogotá | 12 | 10 | 9 | Phase II | 1 |
| 109676 | ( 12 days) Bogotá | 11 | 9 | 6 | Phase II | 1 |
| 109677 | (14 days) Bogotá | 15 | 11 | | Phase II | |
| 109678 | (5 days) Bogotá | 6 | 2 | 5 | Phase II | |
| 109679 | (14 days) Bogotá | 15 | 9 | | Phase II | |
| 109680 | (11 days) Bogotá | 14 | 10 | 4 | Phase II | |
| 109681 | (11 days) Bogotá | 14 | 10 | 4 | Phase II | |
| 109682 | (11 days) Bogotá | 14 | 10 | 4 | Phase II | |

19. In return for the Services performed by Pajak for ESA, EAI agreed to pay Pajak fees and reimburse Pajak for expenses. The fees and expenses were to be paid in U.S. dollars within thirty (30) days following receipt of an invoice by EAI. To date, no invoices have been paid by EAI.

## G.  BREACH OF CONTRACT

20. Pajak has performed its obligations under the MSA.

21. EAI has not performed its contractual obligations. EAI's nonperformance is a breach of the MSA. More specifically, EAI has breached the MSA by failing to pay the following invoices within thirty (30) days following the receipt of the invoices:

|    | Invoice Number | Amount of Invoice | Date Invoice Submitted to EAI |
|----|----------------|-------------------|-------------------------------|
| 1  | 109545         | $487,608          | 9/9/13                        |
| 2  | 109667         | $36,300           | 12/10/13                      |
| 3  | 109668         | $36,300           | 12/10/13                      |
| 4  | 109669         | $36,300           | 12/10/13                      |
| 5  | 109670         | $36,300           | 12/10/13                      |
| 6  | 109671         | $3,300            | 12/10/13                      |
| 7  | 109672         | $36,300           | 12/10/13                      |
| 8  | 109673         | $46,200           | 12/10/13                      |
| 9  | 109674         | $46,200           | 12/10/13                      |
| 10 | 109675         | $42,900           | 12/10/13                      |
| 11 | 109676         | $39,600           | 12/10/13                      |
| 12 | 109677         | $46,200           | 12/10/13                      |
| 13 | 109678         | $16,500           | 12/10/13                      |
| 14 | 109679         | $6,500            | 12/10/13                      |
| 15 | 109680         | $36,300           | 12/10/13                      |
| 16 | 109681         | $36,300           | 12/10/13                      |
| 17 | 109682         | $5,500            | 12/10/13                      |
|    | **TOTAL**      | **$994,608**      |                               |

### H. DAMAGES

22. As a direct and proximate result of EAI's breach, Pajak suffered damages in the amount of $994,608.00 which is the amount that remains due under the terms of the MSA.

## I. ATTORNEY FEES

23. As a result of EAI's breach, Pajak retained an attorney and seeks reimbursement for its reasonable attorney fees, as authorized by Chapter 38 of the Texas Civil Practice & Remedies Code.

## J. PRAYER

24. For these reasons, Pajak asks for judgment against EAI for the following:

a. $994,608.00 for damages resulting from EAI's breach;

b. Reasonable attorney fees, costs and expenses;

c. Prejudgment and post-judgment interest;

d. Costs of suit; and,

e. All other relief the Court deems appropriate.

Respectfully submitted,

FOWLER RODRIGUEZ, LLP

By: /s/ *Randall M. Foret*

**Randall M. Foret – Lead Attorney**
State Bar No. 07256575 / Fed. No. 27663
E-mail: rforet@frfirm.com
Timothy W. Strickland
State Bar No. 19396298 / Fed. No. 1380
E-mail: strick@frfirm.com
Robin Foret
State Bar No. 07256580 / Fed. No. 31159
E-mail: robinforet@frfirm.com
4 Houston Center, Suite 1560
1331 Lamar
Houston, Texas 77010
Telephone: (713) 654-1560
Facsimile: (713) 654-7930

ATTORNEYS FOR PLAINTIFF
PAJAK ENGINEERING, LTD